**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAN GILIANA**, | |
| Plaintiff, | |
| v. | Case No. 21-cv-01416 (CRC) |
| **ANTONY BLINKEN**, in his official capacity as Secretary of State, *et al*., | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Dan Giliana, a United States citizen, seeks to compel the Department of State to adjudicate his Iraqi fiancée's U.S. visa application, which has been pending for nearly four years. He also challenges the Department of Homeland Security's ("DHS") Controlled Application Review and Resolution Program ("CARRP"), an internal agency policy concerning the processing of visa applications that present potential national security concerns. The government has moved to dismiss for failure to state a claim and for lack of subject matter jurisdiction. Because Giliana has not plausibly alleged that the delay in adjudicating his fiancée's visa application is unreasonable, or that she has been injured in any concrete way by CARRP, the Court will grant the government's motion and dismiss the case.

### I.   **Background**

Mr. Giliana is a United States citizen who resides in Arizona. See Compl. ¶ 6, ECF No. 1; Decl. of Dan Giliana ("Giliana Decl.") ¶¶ 1–3, ECF No. 5-1. His fiancée, Sandy Shamon, lives in Iraq. See Compl. ¶¶ 1, 15; see also Giliana Decl. ¶¶ 4, 7, 16.

In January 2018, Giliana filed a visa petition (Form I-129F) with the United States Citizenship and Immigration Services ("USCIS") to obtain lawful permanent resident status for

Shamon.  Compl. ¶¶ 13–14.  USCIS approved that petition in June 2018.  Id. ¶ 13.  A few months later, in October 2018, a consular officer at the U.S. Embassy in Baghdad, Iraq interviewed Shamon and reviewed her visa application.  Id. ¶ 15.  Following the interview, according to Giliana, the consular officer informed Shamon that her application was being placed under "administrative processing" and that she needed to answer additional questions about her prior occupations and contact information.  See id. ¶ 16; Giliana Decl. ¶¶ 8–9.  Since then, Giliana alleges that he and Shamon have repeatedly inquired about the status of her visa application, but the government has provided "no meaningful responses" and does not "publish any information on processing times for [applications in] 'administrative processing.'"  See Compl. ¶¶ 17–18.

Giliana further alleges "on information and belief" that the government is "intentionally delaying this immigration case" through a program known as CARRP (the Controlled Application Review and Resolution Program).  Compl. ¶ 41; id. ¶¶ 37–41.  Per the complaint, CARRP is an internal DHS policy that prohibits the approval of any visa application that presents a "national security concern" and directs consular officers to either deny the application or delay adjudication, often indefinitely.  Id. ¶¶ 38–39.  CARRP allegedly targets applications from predominantly Muslim countries.  Id. ¶ 38.

In May 2021, Giliana brought suit against a host of government officials under the Administrative Procedure Act's ("APA") unreasonable delay provision, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361.  He seeks an order directing the government to process Shamon's visa application within fifteen days and declaratory and injunctive relief as to CARRP.  The government moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6); Giliana

filed an opposition and a motion for summary judgment, attaching a supporting declaration to both.  The matter is now ripe for the Court's decision.

## II.   Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), a court "must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up); see also Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  But a court need not accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  When reviewing a challenge under Rule 12(b)(1), "the court may consider documents outside the pleadings to assure itself that it has jurisdiction," Sandoval v. U.S. Dep't of Justice, 322 F. Supp. 3d 101, 104 (D.D.C. 2018) (Cooper, J.), and the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Under Rule 12(b)(6), "a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint[,] and matters about which the Court may take judicial notice.'"  Sandoval, 322 F. Supp. 3d at 104 (citation omitted).

Because the Court will grant the government's motion to dismiss, it need not recite the summary judgment standard.

## III.   Analysis

The Court first will address, and reject, the government's argument that the doctrine of consular non-reviewability precludes the Court from reviewing Giliana's unreasonable delay claim.  It then will turn to the merits of that claim.  The Court will conclude by briefly addressing Giliana's challenge to CARRP.

3

A.  Consular Non-Reviewability and "Administrative Processing"

Under the doctrine of consular non-reviewability, "courts do not typically have subject-matter jurisdiction to review visa denials because consular officers 'have complete discretion over issuance and revocation of visas.'"  See Rohrbaugh v. Pompeo, 394 F. Supp. 3d 128, 131 (D.D.C. 2019) (Cooper, J.) (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999)).  While the doctrine "clearly applies to final visa determinations, . . . it does not apply to challenges regarding decisions that are not yet final." Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020).

After an initial interview, a visa application "must be issued or refused," but a refusal is often not final because the application may be subject to "further administrative processing." See 9 FAM 403.10-2(A), 403.10-3(A)(2)(2)(b); Ramirez v. Blinken, No. 21-cv-1099 (CRC), ECF No. 14, slip op. at 10 (D.D.C. Mar. 22, 2022) (Cooper, J.).  Administrative processing generally means that additional information is needed before a consular officer can determine whether an applicant is qualified for the visa for which she has applied.  See Administrative Processing Information, U.S. Dep't of State, Bureau of Consular Affairs,

https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Mar. 29, 2022); 9 FAM 306.2-2(A)(a)(2)(a).  There is nothing unusual about this practice, but it means that the initial "refusal" is not the end of the process.  Accordingly, courts have consistently held that when an "'application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final,' and thus 'claims alleging unreasonable delay while a case remains suspended in 'administrative processing' are not barred by the doctrine of consular nonreviewability.'"  See Ibrahim v. U.S. Dep't of State, No. 19-cv-610 (BAH), 2020 WL 1703892, at *5 (D.D.C. Apr. 8,

2020) (collecting cases) (quoting Ghadami v. U.S. Dep't of Homeland Sec., No. 19-cv-00397

(ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020)).  Such is the case here.  See Compl.

¶¶ 1, 16, 18, 29.

      The government nonetheless insists that Shamon's application has been definitively

"refused" and is "not in 'administrative processing.'"  Mot. Dismiss at 8.  It points to the State

Department's Consular Electronic Application Center ("CEAC") database, where one can check

a visa application's status.  The CEAC system indicates that Shamon's application is "refused."

Reading further, however, it also states: "If you were informed by the consular officer that your

case was refused for administrative processing, your case will remain refused while undergoing

such processing.  You will receive another adjudication once such processing is complete."  See

Visa Status Check, U.S. Dep't of State, CEAC, https://ceac.state.gov/ceacstattracker/status.aspx

(search for Shamon's case as of Mar. 22, 2022).  That is exactly the situation Giliana alleges

Shamon is in.[1]

      The D.C. Circuit's decision in Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020

(D.C. Cir. 2021), on which the government relies, is not to the contrary.  Baan Rao simply

reiterated a line from a prior case that "[c]onsular nonreviewability shields a consular official's

---

[1] The State Department has independently confirmed that an application marked "refused" in the CEAC system may still undergo final adjudication after further administrative processing. In March 2020, the Department's Bureau of Consular Affairs issued a visa update explaining that "[a] visa applicant whose case previously displayed as being in 'Administrative Processing' on his or her case status page now displays as being 'refused.'"  See Visas: CEAC Case Status Change, U.S. Dep't of State, Bureau of Consular Affairs (Mar. 5, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/visas-ceac-case-status-change.html?msclkid=2c57e110af7711ec90f12c1f8a11cd2c.  This "administrative change," the update continued, does "no[t] change . . . applicants' actual cases."  Id.  Given this explicit acknowledgement by the State Department, it is surprising that the government continues to insist in litigation that applications in administrative processing have been definitively refused.

decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Id. at 1024 (citing Saavedra Bruno, 197 F.3d at 1159). It does not mention "administrative processing" at all. And again, Giliana is challenging the delay in rendering a decision, not an actual final decision made by a consular officer. In short, nothing in Baan Rao even hints that it upends the many cases holding that this doctrine does not apply to unreasonable delay claims for visa applications undergoing administrative processing.

      B.  Unreasonable Delay

      Turning to the merits, the Court will assess Giliana's claim that the government's delay in processing Shamon's visa violates the APA and Mandamus Act. The APA "imposes a general but nondiscretionary duty" on agencies "to pass upon a matter presented to it 'within a reasonable time,'" Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. § 555(b)), and it authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). When courts review this type of agency inaction, the standard is the same under the APA and Mandamus Act. See Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017). On a motion to dismiss, "the Court is not determining whether there has been an unreasonable delay; rather, it is" evaluating whether a plaintiff's complaint alleges enough facts "to state a plausible claim for unreasonable administrative delay." Jingjing Liu v. Mayorkas, No. 20-cv-654 (CRC), 2021 WL 2115209, at *3 (D.D.C. May 25, 2021) (Cooper, J.) (quoting Ghadami, 2020 WL 1308376, at *7 n.6).

      Courts undertake this evaluation using the six guiding factors set out in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984). The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80 (citations omitted)). Although "not 'ironclad,'" these factors "are intended to provide 'useful guidance.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting TRAC, 750 F.2d at 80).

In balancing the TRAC factors, "the [D.C.] Circuit has stressed that determining whether an agency's delay is unreasonable 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful,'" but will largely depend on "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." Didban v. Pompeo, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (Cooper, J.) (quoting Mashpee Wampanoag Tribal Council, 336 F.3d at 1102). Each unreasonable delay case "must be analyzed according to its own unique circumstances," as each "present[s] its own slightly different set of factors to consider." Air Line Pilots Ass'n, Int'l v. C.A.B., 750 F.2d 81, 86 (D.C. Cir. 1984).

Applying the TRAC factors here, the Court finds that Giliana has not stated a plausible claim for relief. While the length of the alleged processing delay might be concerning if viewed

7

in isolation, full consideration of all the circumstances and factors presented clearly forecloses court-ordered relief.

The Court will kick off with factors one and two: (1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable.  Courts often consider these two together, Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. Nov. 19, 2020), though "[t]he first" is the "most important factor."  In re Core Commc'ns, 531 F.3d at 855.  Taken together, "these factors get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale."  Ctr. for Sci. in the Pub. Interest v. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).  Here, they tip in favor of the government.

The Court's analysis on this score is especially informed by "the resources available to the agency," Mashpee Wampanoag Tribal Council, 336 F.3d at 1102, which due to recent events have been strapped.  For one, "the State Department suspended visa services in all U.S. embassies and consulates around the world in response to the COVID-19 pandemic."  Dastagir v. Blinken, No. 1:20-cv-02286 (TNM), 2021 WL 2894645, at *1 (D.D.C. July 9, 2021); Xiaobing Liu v. Blinken, 544 F. Supp. 3d 1, 11–15 (D.D.C. 2021) (factoring in "the challenges presented by the COVID-19 pandemic"); Shen v. Pompeo, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021).[2]  While COVID-related constraints are relevant, U.S. Embassies

---

[2] This Court joins others in this district that have taken judicial notice of publicly available information related to COVID-19 on government websites.  See, e.g., Whitlock v. U.S. Dep't of Homeland Sec., No. 21-cv-807 (DLF), 2022 WL 424983, at *1–2 & n.1 (D.D.C. Feb. 11, 2022); Dastagir, 2021 WL 2894645, at *1 & n.3; Xiaobing Liu, 544 F. Supp. 3d at 6 n.1.  These facts are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  See Fed. R. Evid. 201(b)(2).  Indeed, Giliana does not contest these general facts, nor could he.  The same applies to the fact

started "[a] 'phased resumption of visa services'" four months into the pandemic "as 'local conditions and resources allow[ed].'"  Dastagir, 2021 WL 2894645, at *1 (second alteration in original) (quoting U.S. Dep't of State, Bureau of Consular Affairs, *Suspension of Routine Visa Servs.* (July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html?msclkid=cbbb240caf7d11ec99ce2657fe0fe870).  As a result, this consideration, by itself, only partly supports the government's position.

More importantly in this case, the U.S. Embassy in Baghdad suspended all public consular operations in January 2020 because of an attack on the compound.  See U.S. Embassy & Consulates in Iraq, Security Alert – U.S. Embassy Baghdad, Iraq (Jan. 1, 2020), https://iq.usembassy.gov/security-alert-u-s-embassy-baghdad-iraq-4/.  The Embassy's visa services remain shuttered for security reasons.  U.S. Embassy & Consulates in Iraq, Visas, https://iq.usembassy.gov/visas/ (last visited Mar. 29, 2022).  These circumstances provide a "rhyme [and] reason" for a portion, and a significant one, of the delay here.  See Ctr. for Sci. in the Pub. Interest, 74 F. Supp. 3d at 300.  Excluding the period from the January 2020 suspension of visa services at the Baghdad Embassy to the present, Giliana is left with a delay of almost fifteen months (i.e., from Shamon's October 2018 interview to January 2020).

The question then becomes whether this shorter delay is unreasonable.  Absent another applicable rule of reason, courts "typically turn to case law as a guide," Sarlak v. Pompeo, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020), and, in other contexts, have "generally found that immigration delays in excess of five, six, seven years are unreasonable,

---

of the suspension of consular services at the U.S. Embassy in Baghdad due to an attack on that compound, which the Court discusses next.

while those between three to five years are often not unreasonable." Didban, 435 F. Supp. 3d at 176 (citation omitted); see also Mirbaha v. Pompeo, 513 F. Supp. 3d 179, 185 (D.D.C. 2021) (same for K-1 fiancée visas); Milligan, 502 F. Supp. 3d at 318–19 (same).  A fifteen-month delay falls comfortably within the reasonable range.  Of course, without the exclusion of time for security- and pandemic-related reasons, the delay would be a little under four years, and that longer delay plausibly stretches the boundaries of reasonableness.  But again, it is indisputable that the security situation at the Baghdad Embassy, resulting in the suspension of its consular services, provides a justifiable rationale for a large chunk of the delay.

In opposition, Giliana cites "the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  See 8 U.S.C. § 1571(b); but see Pl. Opp'n at 11 (acknowledging "there is no set deadline").  Although "a sense of Congress resolution is not law," Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008), "the second TRAC factor asks merely whether Congress has provided an '*indication* of the speed with which it expects the agency to proceed.'"  Hulli v. Mayorkas, 549 F. Supp. 3d 95, 101 (D.D.C. 2021) (Cooper, J.) (citation omitted).  At this stage, then, this aspirational, non-mandatory timeline expressed by Congress nudges the second factor in Giliana's favor, but only slightly.

In sum, while both sides have points in their favor, considering all the relevant circumstances presented here, the Court finds the first two factors support the government.

The fourth factor also decidedly favors the government, as "a judicial order putting" Shamon's application "at the head of the queue" would "move[] all others back one space and produce[] no net gain."  See In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991).  "This factor carries the greatest weight in many cases, and it does so here."  Milligan, 502 F. Supp. 3d

at 319; see also Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (reiterating "the importance of 'competing priorities,'" noting the Circuit has "refused to grant relief, even though all the other [TRAC] factors" favored plaintiff).  Giliana has no allegations that Shamon's application is being "treated . . . differently from anyone else" who has a similar visa application before the U.S. Embassy in Baghdad.  See Bagherian v. Pompeo, 442 F. Supp. 3d 87, 94–95 (D.D.C. 2020) (citations omitted).  And delays due to resource constraints typically do not warrant a "judicial reordering[] of agency priorities."  See id. at 96 (cleaned up); Didban, 453 F. Supp. 3d 176; Milligan, 502 F. Supp. 3d at 319.

On the other side of the scale, the third and fifth TRAC factors favor Giliana and Shamon.  The third "assesses whether 'human health and welfare are at stake' such that judicial intervention is more justified, and the fifth evaluates the 'nature and extent of the interests prejudiced by delay.'"  Schwartz v. Dep't of Homeland Sec., No. 21-cv-378 (JEB), 2021 WL 4133618, at *4 (D.D.C. Sept. 10, 2021) (quoting TRAC, 750 F.2d at 80).  Several courts in this district have found that these factors weigh in favor of plaintiffs when delays force them to postpone their lives together as married couples.  See e.g., Didban 435 F. Supp. 3d at 177; Bagherian, 442 F. Supp. 3d at 95.  No doubt, Giliana and Shamon have suffered from this delay in "build[ing] their lives together."  Compl. ¶ 1; id. ¶ 19.  But these factors do not carry the day.

The last TRAC factor has no role in this case because, as Giliana acknowledges, he "has not asserted bad faith."  Pl. Opp'n at 14.

Balancing all the relevant factors and considerations presented, the Court concludes that Giliana has failed to state a plausible claim of unreasonable delay.  The Court recognizes the overall delay has been prolonged, and it encourages the government to act on the application as soon as possible once the U.S. Embassy in Baghdad resumes its visa services.  But the Court

lacks a basis to reorder the State Department's priorities by allowing this application to jump in front of others in line.  That, especially in combination with the suspension of services in Baghdad for security reasons, militate decisively in favor of dismissal.  Neither the complaint nor Giliana's briefing offers a reason for the Court to depart from this conclusion.  Cf. Jingjing Liu, 2021 WL 2115209, at *1, *5 (denying motion to dismiss where complaint plausibly alleged, with statistical support, that USCIS intentionally increased processing times for an entire category of petitions, and judicial relief could produce a net gain for those "petitioners as a group"); Ramirez, No. 21-cv-1099, supra, ECF No. 14, slip op. at 17–21, 23 n.10, 23–25 (permitting claims related to K-1 fiancé visas to proceed on the narrow ground that the Manila Embassy failed to follow a "mandatory" system, which both provided the applicable rule of reason for that case and plausibly gave K-1 visa applications higher priority).

   C.  Challenge to CARRP

   Lastly, the Court concludes that Giliana has failed to establish standing to challenge CARRP, the DHS "internal policy" used to "investigate and adjudicate applications deemed to present potential 'national security concerns.'"  See Compl. ¶ 39.  A plaintiff bears the burden of demonstrating the three elements of Article III standing: (1) he "must have suffered an 'injury in fact'" that is (2) fairly traceable "to the challenged action," and (3) "it must be 'likely' . . . that the injury will be 'redressed by a favorable decision.'"  See Lujan, 504 U.S. at 560–61 (citations omitted).

   Giliana alleges that CARRP "intentionally delays the applications of Muslims or those from predominantly-Muslim countries due to perceived security concerns."  Compl. ¶¶ 5, 38.  He also asserts that the State Department and DHS work together in carrying out delayed background investigations.  Id. ¶ 37.  Yet the factual allegations concerning CARRP's

application to Shamon are thin.  Giliana alleges only that his "fiancée is from [a] predominantly-Muslim country" and that, "on information and belief, . . . the Defendants are intentionally delaying this immigration case because of" CARRP.  Id. ¶ 41.  He offers "no factual allegations to support that conclusion," and "mere speculation" is not enough to state a claim.  See Ahmed v. U.S. Dep't of Homeland Sec., No. 21-cv-893 (APM), 2022 WL 424967, at *4 (D.D.C. Feb. 11, 2022) (dismissing CARRP challenge); Dastagir, 2021 WL 2894645, at *6 n.7 (same); Ghadami, 2020 WL 1308376, at *6 (same).  Nor is the mere presence of delay inherently suggestive of CARRP being applied, especially since USCIS approved Shamon's visa petition in June 2018, six months after Giliana filed it.  See Compl. ¶ 13.  On these allegations, therefore, Giliana has not plausibly alleged any concrete injury from CARRP.

To be clear, individuals challenging CARRP need not have concrete proof that they were subjected to the program to survive a motion to dismiss.  Take Jafarzadeh v. Nielsen, in which another court refused to dismiss certain CARRP claims, finding that the plaintiff met his burden to demonstrate standing.  321 F. Supp. 3d 19, 31–35 (D.D.C. 2018).  In Jafarzadeh, the plaintiff alleged certain facts that, if true, would not directly prove that CARRP was at play but would at least support an inference that it was.  He alleged, for example, that he formerly worked for the Interests Section of the Islamic Republic of Iran; that he was "interviewed or contacted a number of times by the Federal Bureau of Investigation" while his petition was pending with USCIS; that, based on the "content and nature of these interviews," the FBI wanted him to become an informant and was willing to "use[] its power to remove the roadblocks hindering the adjudication of his applications before USCIS" if he agreed; and that, in response to FBI questioning, he "denied ever having provided support to, express[ing] support for, or of having

engaged in, terrorism or terrorist-related activity." Id. at 24–25.  With these allegations, the plaintiff pled a plausible theory of injury from CARRP.

By contrast, although this complaint may state some of the same legal conclusions, it does not offer any allegation that raises a plausible inference that Shamon is being injured by CARRP.  The Court therefore lacks subject matter jurisdiction.

**IV.   Conclusion**

For these reasons, the Court will grant the government's motion to dismiss and deny Giliana's motion for summary judgment.  A separate Order accompanies this Memorandum Opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  March 29, 2022